Approved: _____
NI QIAN
Assistant United States Attorney

Before:   THE HONORABLE KEVIN N. FOX
          United States Magistrate Judge
          Southern District of New York

**21 MAG 3353**

------------------------------------X
UNITED STATES OF AMERICA            :   SEALED COMPLAINT
                                    :
                                    :   Violation of
          - v. -                    :   21 U.S.C. § 846
                                    :
OMAR ARIAS CASILLA,                 :   COUNTY OF OFFENSE:
                                    :   NEW YORK, BRONX
          Defendant.                :
                                    :
------------------------------------X

SOUTHERN DISTRICT OF NEW YORK, ss.:

      CHRISTOPHER GULINO, being duly sworn, deposes and says that he is a Special Agent with Homeland Security Investigations ("HSI"), and charges as follows:

### COUNT ONE
(Conspiracy to Distribute Narcotics)

      1.    From at least in or about February 2021 to in or about March 2021, in the Southern District of New York and elsewhere, OMAR ARIAS CASILLA, the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

      2.    It was a part and an object of the conspiracy that OMAR ARIAS CASILLA, the defendant, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

      3.    The controlled substance that OMAR ARIAS CASILLA, the defendant, conspired to distribute and possess with intent to distribute was 400 grams and more of mixtures and substances containing a detectable amount of fentanyl, in violation of

Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

The bases for my knowledge and the foregoing charge are, in part, as follows:

4. I am a Special Agent with HSI. This affidavit is based on my personal participation in the investigation of this matter, my conversations with other law enforcement agents, my interviews of witnesses, as well as my examination of reports and records. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5. Based on my own observations as part of the investigation, my conversations with a confidential source ("CS-1")[1] and with other law enforcement officers, including a Spanish-speaking law enforcement officer who listened to the recordings detailed below, and my review of reports, I have learned the following, in substance and in part:

a. On or about February 25, 2021, CS-1 received a phone call via Whatsapp from an individual in the Dominican Republic ("CC-1"). During this unrecorded phone call, CC-1 told CS-1, in sum and substance, that he had people in Massachusetts who had "white China rice." CS-1 told CC-1, in sum and substance, that CS-1 was interested. Based on my training and experience, I know that "white China rice" is a term that is often used to refer to fentanyl.

b. Subsequently, in or about the week of February 28, 2021, CS-1 received a phone call via Whatsapp from an individual who referred to himself as "Fendi." During this unrecorded phone call, Fendi asked CS-1, in sum and substance, if CS-1 would be able to go check the product, and that Fendi

---

[1] CS-1 was convicted of conspiracy to distribute narcotics in May 2020. Since October 2020, CS-1 has been providing information to the Government in the hopes of receiving leniency at sentencing. Information provided by CS-1 in this case has been proven reliable and has been corroborated by, among other things, recordings.

2

had associated in, among other areas, Lawrence, Massachusetts. CS-1 told Fendi, in sum and substance, that he would go to Lawrence.

  c. On or about March 2, 2021, Fendi sent CS-1 a Whatsapp message with a telephone number ("Cellphone-1"). Subsequently, in or about the same week, CS-1 received a phone call from Cellphone-1 via Whatsapp. During this unrecorded phone call, an individual later identified as OMAR ARIAS CASILLA, the defendant, told CS-1, in sum and substance, that ARIAS CASILLA had been told that CS-1 was planning to come meet ARIAS CASILLA. CS-1 told ARIAS CASILLA, in sum and substance, that he was planning to go up to Massachusetts within the week. ARIAS CASILLA told CS-1, in sum and substance, that ARIAS CASILLA would provide CS-1 an address on or about Sunday that week.

  d. On or about March 5, 2021, CS-1 called Fendi via Whatsapp. During this recorded phone call,[2] CS-1 told Fendi, in sum and substance, that CS-1 was currently in Manhattan, New York, and that if the "car" was good, CS-1 would buy one, two, or three. CS-1 and Fendi then discussed prices, and they agreed that CS-1 would pay approximately $43,000 per "car" and an additional approximately $1000 to $1500 per "car" to transport from Massachusetts to New York. CS-1 also agreed, in sum and substance, to go to Lawrence the following Monday. Based on my participation in this investigation and my training and experience, I understand that when CS-1 said if the car was good, he would buy one, two, or three, he meant that if the sample of fentanyl was good, he would buy up to three kilograms; and when Fendi and CS-1 agreed to the price per "car," that is in referenced to the price per kilogram of fentanyl.

  e. On or about March 8, 2021, CS-1 traveled to Lawrence, Massachusetts. CS-1 called Cellphone-1 multiple times with no answer. CS-1 then sent messages to Fendi via Whatsapp to ask, in sum and substance, what was happening. Fendi responded via Whatsapp, in substance and in part, that he was also trying to contact the individual in Lawrence. Later that same day, CS-1 received messages on Whatsapp from Cellphone-1, wherein ARIAS CASILLA told CS-1, in sum and substance, that

---

[2] The recorded phone conversations and messages referred to in this Complaint were conducted in Spanish. My understanding of the sum and substance of these communications is based on my conversations with CS-1 and Spanish-speaking law enforcement agents who have reviewed a portion of these communications.

3

ARIAS CASILLA had been sleeping but that he would be ready shortly.  ARIAS CASILLA then sent via Whatsapp an address in Lawrence, Massachusetts (the "Meeting Place").

   f. Subsequent to the phone call with ARIAS CASILLA, law enforcement officers went to the Meeting Place to set up surveillance.  At the Meeting Place, law enforcement officers observed ARIAS CASILLA sitting in a vehicle (the "Casilla Vehicle") that was parked in the vicinity of the Meeting Place.  Shortly thereafter, CS-1 arrived in the vicinity of the Meeting Place in his own vehicle (the "CS-1 Vehicle").  After CS-1 arrived, he received a phone call via Whatsapp from Cellphone-1.  During this recorded phone call, ARIAS CASILLA told CS-1, in sum and substance, that CS-1 had driven past ARIAS CASILLA and should back up a bit.  Shortly thereafter, law enforcement officers observed ARIAS CASILLA exit the CASILLA Vehicle and approach the CS-1 Vehicle.  During this audio and video recorded meeting between CS-1 and ARIAS CASILLA, ARIAS CASILLA gave CS-1 a chunky substance wrapped in plastic, and ARIAS CASILLA told CS-1, in sum and substance, to try it out and that CS-1 would not regret it.  After the meeting, CS-1 received a phone call via Whatsapp from Fendi.  During this unrecorded phone call, Fendi told CS-1, in sum and substance, that CS-1 should check the sample quickly because Fendi and his associates only had approximately two or three cars left, and that Fendi wanted to use CS-1 as a pipeline to New York.  Based on my training and experience, I understand that the object ARIAS CASILLA gave to CS-1 is a sample of suspected fentanyl, and that the two or three cars that Fendi said they had left is referring to two or three kilograms of fentanyl.

   g. On or about March 10, 2021, CS-1 called Cellphone-1 via Whatsapp.  During this recorded phone call, CS-1 told ARIAS CASILLA, in sum and substance, that CS-1 was currently in Harlem meeting with someone CS-1 had given the sample to and that CS-1 was going to go to the Bronx later to meet with another individual to whom CS-1 had given the sample, and that CS-1 would let ARIAS CASILLA know later whether these individuals liked the sample.

   h. On or about March 11, 2021, CS-1 sent Fendi a message over Whatsapp, telling Fendi, in sum and substance, that the sample was of good quality.

   i. On or about March 12, 2021, CS-1 sent Fendi a message over Whatsapp, telling Fendi, in sum and substance, that he wanted three and would have the money ready the

following Tuesday.  Based on my participation in this investigation and my training and experience, I understand that when CS-1 said that he wanted three, he was referring to wanting to buy three kilograms of fentanyl. Later on or about the same day, CS-1 sent Fendi a message over Whatsapp, telling Fendi, in sum and substance, that CS-1 was waiting on money from a second individual who was going to contribute to the purchase of the fentanyl.

    j. On or about March 21, 2021, CS-1 sent a series of messages to Fendi on Whatsapp, stating in sum and substance, that CS-1 would have the money ready on Tuesday.

    k. On or about March 22, 2021, Fendi sent CS-1 a series of messages over Whatsapp, stating, in sum and substance, that they are ready to go on Tuesday.

    l. On or about March 23, 2021, CS-1 sent Fendi a message over Whatsapp, telling Fendi, in sum and substance, that CS-1 will be working on that day, but that he will be able to meet tomorrow.

    m. On or about March 24, 2021, Fendi sent CS-1 a series of messages over Whatsapp, providing CS-1, in sum and substance, with updates regarding the status of the transporter, including that the transporter took a van from Lawrence, Massachusetts to New York.

    n. Later on or about the same day, CS-1 received a phone call from a number with a Massachusetts area code ("Cellphone-2").  During this recorded phone conversation, the user of Cellphone-2 ("CC-2") told CS-1, in sum and substance, that he was currently in the Bronx, but that the van was making one more stop.  Subsequently, CS-1 sent Fendi a message over Whatsapp with the address of a parking lot in the Bronx (the "Parking Lot").

    o. At approximately 1:15 p.m., CS-1 arrived in the vicinity of the Parking Lot, called Cellphone-2.  During this recorded phone call, CC-2 told CS-1, in sum and substance, that he was inside a store across the street from the Parking Lot.  CS-1 told CC-2, in sum and substance, that CC-2 should come to the Parking Lot.  While CS-1 and CC-2 were still on the phone call, CS-1 observed an individual crossing the street and walking towards the Parking Lot, and CS-1 asked CC-2 whether he was the individual in the blue sweatshirt and hat.  At that time, law enforcement officers observed an individual wearing a

5

blue sweatshirt, a hat, and a backpack cross the street and enter the CS-1 Vehicle in the front passenger side.

       p.   Inside the CS-1 Vehicle, in a recorded meeting, CC-2 told CS-1, in sum and substance, that they sent CS-1 three packages. At this time, CC-2 gave CS-1 a white plastic bag, and CS-1 observed that there were three rectangular shaped objects inside the plastic bag. CC-2 then told CS-1, in sum and substance, CC-2 heard he was supposed to pick up some money from CS-1, and that he will call Fendi to see how much. Subsequently, CC-2 initiated a phone call on his cellphone.

       q.   Shortly after, law enforcement officers arrested CC-2 and seized a white shopping bag containing three rectangular shaped objects, weighing approximately 3.5 kilograms. Based on my participation in this investigation and my training and experience, I believe these three objects contain the three kilograms of fentanyl as discussed between CS-1 and Fendi.

      6.   Law enforcement officers identified the individual who met with CS-1 on or about March 8, 2021, as OMAR ARIAS CASILLA, the defendant. According to the records maintained by the Massachusetts Registry of Motor Vehicles, the Casilla Vehicle is registered to ARIAS CASILLA. Based on my own observations, and comparing a photo of ARIAS CASILLA maintained by the Massachusetts Registry of Motor Vehicles, I have determined that ARIAS CASILLA is the individual who met with CS-1 on or about March 8, 2021. On or about March 8, 2021, CS-1 was shown a photo array with a photo of ARIAS CASILLA maintained by the Massachusetts Registry of Motor Vehicles, and CS-1 identified ARIAS CASILLA has the individual he met with on or about March 8, 2021, and from whom he obtained a sample of suspected fentanyl.

WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of OMAR ARIAS CASILLA, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

                                                s/ Christopher Gulino by KNF,USMJ
                                                CHRISTOPHER GULINO
                                                Special Agent
                                                Homeland Security Investigations

Sworn to me by telephone this
25th day of March, 2021

*Kevin Nathaniel Fox*
_____
THE HONORABLE KEVIN N. FOX
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK